# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

MARTA VELASQUEZ FLORES,       *

         Plaintiff          *

         v.              *       Civil Case No. 8:20-cv-3600-AAQ

ELITE COMMERCIAL CLEANING,    *
LLC, et. al

                       *

         Defendants       *

                       *

## MEMORANDUM OPINION AND ORDER

This is a case concerning Defendants Elite Commercial Cleaning, LLC's and Anna Lucia Vieira's failure to adequately pay Plaintiff Marta Velasquez Flores in accordance with state and federal wage laws.  Pending before the Court is Plaintiff's Motion for Attorney's Fees.  ECF No. 66.  The Motion has been fully briefed, and a hearing is not necessary under this Court's Local Rules.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons discussed below, the Motion is granted in part, but the award will be reduced to $67,920.72 in fees and $8,228.62 in costs – the amount that is a reasonable recovery.

## BACKGROUND

On November 2, 2020, Ms. Velasquez Flores filed a complaint in the Circuit Court for Montgomery County, Maryland against Elite Commercial Cleaning, LLC ("Elite Commercial Cleaning") and its owner, Ana Lucia Vieira.  *See* ECF No. 1-1, at 4.  On December 11, 2020, Defendants removed the case to this Court.  ECF No. 1.  Ms. Velasquez Flores's Complaint alleged that Elite Commercial Cleaning employed her as a maid.  ECF No. 6, at ¶¶ 4–7.  Ms. Velasquez Flores alleged that while she worked for Elite Commercial Cleaning, she worked in excess of forty

hours per week while the company compensated her below the applicable minimum wage and failed to pay her overtime wages. *Id.* at ¶¶ 11–13. Ms. Velasquez Flores also alleged that Elite Commercial Cleaning and Ms. Vieira failed to pay her any wages for the last four weeks of her employment with Elite Commercial Cleaning. *Id.* at ¶ 14. Ms. Velasquez Flores sought relief against both Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*; the Montgomery County Minimum Wage Law ("MCMWL"), Montgomery Cnty. Code §§ 27-67, *et seq.*; and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.* ECF No. 6 at 3–5.

The Court conducted a five-day jury trial from October 30, 2023 through November 3, 2023 to determine liability and damages. ECF Nos. 50–54. After deliberation, the jury determined that Ms. Velasquez Flores was not an independent contractor, but an employee of Elite Commercial Cleaning and that Elite Commercial Cleaning failed to pay Ms. Velasquez Flores minimum and overtime wages. ECF No. 63. The jury also determined that Plaintiff did not prove that Defendants did not act in good faith; if Plaintiff had, she may have been entitled to additional treble damages under the MWPCL. *Id.* Accordingly, the jury awarded Ms. Velasquez Flores damages in the amount of $3,278.52, representing the overtime and minimum wages owed to her. *Id.*

At the close of trial, the Court directed counsel for Ms. Velasquez Flores to file any Motion for Attorneys' Fees and Costs in accordance with the Court's Local Rule 109. Loc. R. 109 (D. Md. 2023). Plaintiff also sought leave to file a Motion for Liquidated Damages under the FLSA and the MWHL, which the Court granted her leave to do. On November 16, 2023, Ms. Velasquez Flores filed her Motion for Attorney Fees, seeking an award of $75,916.00 in fees and $8,228.62

in costs.  ECF Nos. 66, 67.  On December 19, 2023, Ms. Velasquez Flores filed a Memorandum in support of her Motion for Attorney Fees.  ECF No. 67.  On January 18, 2024, Defendants filed a Response in Opposition to Ms. Velasquez Flores's Motion, arguing that the Court should reduce the award of fees that Ms. Velasquez Flores is seeking by 70%.  ECF No. 70.  On January 26, 2024, Ms. Velasquez Flores filed a Reply in Support of her Motion.  ECF No. 71.  On February 5, 2024, the Court granted Plaintiff's Motion for Liquidated Damages under the FLSA and the MWHL, resulting in a total award to Plaintiff of $6,557.04.  ECF No. 72, at 6.

## DISCUSSION

Prevailing plaintiffs in wage and hour disputes are entitled to recover their attorneys' fees and legal expenses.  Both the FLSA and MWHL provide for the mandatory awarding of reasonable attorneys' fees to prevailing plaintiffs.  In a FLSA action, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Similarly, the MWHL provides that "[i]f a court determines that an employee is entitled to recovery in an action[,] . . . the court shall award to the employee . . . reasonable counsel fees and other costs."  Md. Code Ann. Lab. & Empl. § 3-427(d)(1)(iii).  In actions under the MWPCL, courts have discretion over the awarding of attorneys' fees.  Md. Code Ann. Lab. & Empl. § 3-507(b)(1) ("If, in an action under . . . this section, a court finds that an employer withheld the wage of an employee . . . the court may award the employee . . . reasonable counsel fees and other costs").  Even where the awarding of attorneys' fees is mandatory, however, the amount of such fees "is within the sound discretion of the trial court."  *Lippe v. TJML, LLC*, No. DKC-12-0260, 2013 WL 5234230, at *2 (D. Md. Sept. 13, 2013) (quoting *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984)).

### I.   Attorneys' Fees

"To properly calculate an attorney's fees award, courts undertake a three-step process: (1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to the successful ones; and (3) evaluate the degree of success of the plaintiffs." *Randolph v. PowerComm Constr., Inc.*, 780 Fed. App'x 16, 22 (4th Cir. 2019). "Once a fee request is submitted, it becomes the responsibility of the party challenging the request to articulate the areas where an award would be inappropriate." *Barnes v. NCC Bus. Servs., LLC*, No. PJM-18-1473, 2019 WL 4141012, at *2 (D. Md. Aug. 30, 2019). "[T]he Court will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge." *Thompson v. U.S. Dept. of Hous. & Urb. Dev.*, No. MJG-95-309, 2002 WL 31777631, at *10 (D. Md. Nov. 21, 2002).

To calculate an award of attorney's fees, a court first "determine[s] the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). In determining the reasonableness of the billing rates and hours worked, the United States Court of Appeals for the Fourth Circuit has directed courts to consider the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* factors*"):

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88 n.5.  There is a "'strong presumption' that the lodestar number represents a reasonable attorney's fee."  *Id.* at 88–89 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 548 (2010)).  The fee applicant bears the burden of establishing any upward adjustment of the lodestar figure.  *Perdue*, 559 U.S. at 553.

Plaintiff submitted a fee petition in which she seeks recovery of $75,916.00 in attorneys' fees and $8,228.62 in costs.  ECF No. 67-2, 67-3.  The fee calculation is based on a rate of $435.00 per hour for Plaintiff's attorney, Mariusz Kurzyna, $425.00 per hour for the assistance of a managing partner at Mr. Kurzyna's law firm, and $150.00 per hour for the firm's paralegals.  ECF No. 67-1, at ¶¶ 12–14.  Exhibit 2 to Plaintiff's Motion for Attorney Fees provides a record of the time that Plaintiff's counsel devoted to this case.  *Id.* at ¶ 16.  Exhibit 3 to Plaintiff's Motion for Attorney Fees details the legal costs that Plaintiff's counsel incurred while pursuing this action.  *Id.* at ¶ 17.

Plaintiff does not seek an upward adjustment of the lodestar value.  ECF No. 67.  Defendants advance several arguments in favor of reducing the amount requested in the fee petition.  First, Defendants argue that the Court should adjust the lodestar figure downward based on several of the *Johnson* factors.  ECF No. 70, at 3.  Second, Defendants argue that at step three of the process, the Court should reduce Plaintiff's fee award based on the degree of success that Plaintiff achieved in this case.  *Id.* at 7.  Finally, Defendants ask the Court, as a matter of policy, to adjust the requested fee downward because of the practical consequences the award will have on Defendants.  *Id.* at 9.  The Court addresses each argument in turn below.

## A.      Adjustment to the Lodestar Figure

In opposition to Plaintiff's fee petition, Defendants argue that the lodestar value Plaintiff asserts is unreasonable.  *Id.* at 2.  Defendants do not dispute the reasonableness of Plaintiff's

counsel's hourly fee, *id.* at 3, rather, they challenge the lodestar value based on the hours that Plaintiff's counsel expended in light of several *Johnson* factors.  *Id.*

### 1.  Time and Labor Expended

In order to recover attorney's fees, counsel must submit appropriate materials supporting their request.  The party seeking the award of fees "must provide 'detailed records' that specify 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'"  *Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, No. CCB-14-2533, 2016 WL 3440191, at *1 (D. Md. Jun. 23, 2016) (quoting *Rauch v. McCall*, 761 A.2d 76, 84 (Md. App. 2000)).  Plaintiff's counsel attest that they devoted the following hours to the following tasks: 1) 32.9 hours on case development, background investigation, and case administration; 2) 3.6 hours preparing the pleadings; 3) 23.3 hours on discovery matters, including interrogatories, document production, and other written discovery; 4) 9.4 hours conducting depositions; 5) 7.6 hours on motions practice; 6) 4.3 hours attending court hearings; 7) 47.4 hours preparing for trial and working on post-trial motions; 8) 53.9 hours attending trial; and 9) 5.3 hours preparing this fee petition.  ECF No. 67, at 6.  Defendants argue that the first *Johnson* factor, the time and labor expended, supports a reduction of the fees requested because Plaintiff's petition includes "excessive time entries."  ECF No. 70, at 3.

### i.  Time Spent Preparing Discovery Responses

First, Defendants take issue with Plaintiff's counsel's logging of 13.4 hours preparing discovery responses.  *Id.*  Defendants argue that because they "posed only 17 interrogatories to Plaintiff, the majority of which required no research or extensive inquiry to answer," this time entry is excessive and requires downward adjustment.  *Id.*  In response, Plaintiff asserts that her counsel reasonably expended 13.4 hours preparing discovery responses because the responses

required counsel to review Plaintiff's Google location data and comb through emails and text messages to find responsive documents.   ECF No. 71, at 1.   Plaintiff's Reply explains that counsel's review of this material, particularly the Google location data, was necessary because the records contained the information required to prove her damages in this case.  *Id.*  Plaintiff also responds that her counsel had to discuss the records with Plaintiff to "verify which data corresponded to Plaintiff's work hours."  *Id.*

Given this context, Plaintiff's counsel's expenditure of 13.4 hours to respond to the seventeen interrogatories is not *per se* unreasonable.   During trial, the Court observed the volume of Google location data that Plaintiff's counsel reviewed.   However, some of this work was duplicative given that Plaintiff's counsel had already dedicated significant time to this task at the beginning of the case.  *See* ECF No. 67-2, at 1.  Entries from the spring of 2020 include: 2.5 hours spent reviewing pay documentation and GPS records on April 21, 2020; 1.2 hours spent reviewing documentation and communication with Plaintiff "re[garding the] same" on April 22, 2020; 3.3 hours spent reviewing and compiling location data on April 23, 2020; 2 hours spent reviewing location history and correspondence on April 24, 2020; 1.1 hours reviewing evidence and communicating with Plaintiff "re[garding the] same" on April 30, 2020; 1.2 hours reviewing and compiling evidence and communicating with Plaintiff "re[garding the] same" on May 1, 2020; 1.4 hours calculating damages on May 26, 2020; and 3.3 hours finishing calculating damages and starting to draft a demand letter on May 27, 2020.   Having already spent approximately sixteen hours reviewing and compiling this information, it was duplicative for Plaintiff's counsel to spend several additional hours reviewing the same data in order to respond to Defendants' discovery requests.   To reach a reasonable lodestar value, a court "must . . . delete duplicative . . . hours . . . ." *Nelson v. A & H Motors, Inc.*, No. JKS-12-2288, 2013 WL 388991, at *1 (D. Md. Jan. 30, 2013)

(quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994)).  The Court finds that much of the time Plaintiff spent responding to Defendants' interrogatories was duplicative and will accordingly adjust the recoverable time spent on this task to 7 hours.

### ii.    Time Spent Deposing Ms. Vieira

Next, Defendants argue that the time Plaintiff's counsel spent deposing Defendant Vieira was excessive "in light of the relatively straightforward nature of the case . . ."  ECF No. 70, at 3–4.  Defendants assert that Plaintiff's deposition of Ms. Vieira created unnecessary costs because the "topics raised in the deposition were all answered and addressed in Defendants' response" to Plaintiff's discovery requests.  *Id.* at 4.  In response, Plaintiff asserts that taking the deposition of Ms. Vieira was reasonable and, in fact, the Court ordered Defendants to make themselves available for deposition because their discovery responses were inadequate.  ECF No. 71, at 2.  "The costs associated with a deposition are commonly awarded 'when the taking of the deposition [was] reasonably necessary at the time of its taking.'"  *Wyne v. Medo Indus., Inc.*, 329 F. Supp. 2d 584, 588 (D. Md. 2004) (quoting *LeVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987)).  *See also* 10 Wright, Miller, & Kane, *Federal Practice and Procedure* § 2676 (3d ed. 1998) ("When a deposition is not actually used at trial or as evidence on some successful preliminary motion, whether its cost may be taxed generally is determined by deciding if the deposition reasonably seemed necessary at the time it was taken").

Here, Plaintiff spent 2.4 hours preparing for and 4.3 hours deposing both Defendants.  ECF No. 67-2, at 4.  Plaintiff did not use Ms. Vieira's deposition transcript at trial during cross examination or in filing any preliminary motions; however, "[i]t is not necessarily fatal to taxation that [a deposition was] not introduced [into evidence] or otherwise used at trial."  *Advance Bus. Sys. & Supply Co. v. SCM Corp.*, 287 F. Supp. 143, 165 (D. Md. 1968), *aff'd and remanded for*

*modification of damages*, 415 F.2d 55 (4th Cir. 1969).  Plaintiff took Ms. Vieira's deposition in response to Defendants' failure to respond to Plaintiff's discovery requests, *see* ECF Nos. 16, 17, 22, 24 (regarding discovery disputes), evidencing the necessity of the deposition at the time Plaintiff took it.  Additionally, it was reasonable for Plaintiff to depose Ms. Vieira given that she was one of two central witnesses and a party to the litigation.  *See*, *e.g.*, *Schwartz v. Rent-A-Wreck of Am.*, No. PJM-07-1679, 2016 WL 3906581, at *4 (D. Md. July 14, 2016) (finding that the deposition of an individual was reasonably necessary, in part, because he "was a party to the litigation"); *De Paredes v. Zen Nails Studio, LLC*, No. TDC-20-2432, 2023 WL 8235753, at *4 (D. Md. Nov. 28, 2023) (awarding fees for time spent deposing individual defendants in wage case); *Sakala v. Milunga*, No. PWG-16-790, 2018 WL 5724010, at *6 (D. Md. Oct. 31, 2018) (same, but reducing the award because having two attorneys attend the depositions was unnecessary).  Further, the amount of time Plaintiff's counsel spent on this deposition, 6.7 hours in total, was relatively low.  *See*, *e.g.*, *Sergeant v. Acol*, No. PWG-15-2233, 2018 WL 276431, at *6 (D. Md. Jan. 3, 2018) (finding that 24.8 hours preparing for and attending a deposition was reasonable, but 24 hours preparing for a four-hour deposition was not reasonable and reducing that time entry by three hours); *P5 Sols. v. Steinke*, No. 1:18-cv-1380, 2020 WL 3259793, at *3 (E.D. Va. June 15, 2020) (finding that approximately 25 hours spent on activities relating to the depositions of the plaintiff and defendant was reasonable); *Stacy v. Stroud*, 845 F. Supp. 1135, 1144 (S.D.W.Va. 1993) (finding that 5.5 hours preparing for a deposition was "well within the bounds of reason").  Accordingly, the Court will not exclude or reduce these hours from the fee award.

        **iii.**    **Time Spent Preparing Motions *in Limine***

Defendants next contend that Plaintiff's counsel's time entry for preparing motions *in limine* was excessive given that the motions used "largely boilerplate" language and "should not [have] require[d] 5.6 hours" to prepare.  ECF No. 70, at 4.  Plaintiff argues that 1.7 of the hours Defendants included in this total were spent generally reviewing discovery, "which merely included spotting issues for potential motions *in limine*."  ECF No. 71, at 2.  Rather, Plaintiff asserts that her counsel devoted only 3.9 hours to the researching, drafting, editing, and filing of the Motions *in Limine*.  *Id.*  While there is support for denying the recovery of fees for time spent drafting boilerplate motions where the time was clearly excessive, here, spending 3.9 hours on such motions is not "so excessive as to be unreasonable and unreliable on [its] face."  *Jones v. Bryant*, No. 01-cv-936, 2004 WL 1013308, at *1 (M.D.N.C. May 4, 2004) (excluding recovery of attorneys' fees where excessive time entries included unreasonable time spent preparing boilerplate motions).  Further, of the three Motions Plaintiff drafted, two required some legal research.  *See* ECF Nos. 36–38 (Plaintiff's Motions *in Limine*); *Harrison-Belk v. Rockhaven Cmty. Care Home*, No. 3:07-54-CMC, 2008 WL 2952442, at *2 (D.S.C. July 29, 2008) (finding that 3.5 hours spent researching and drafting a motion *in limine* was excessive because it was straightforward and did not require legal research).  Accordingly, the Court will not reduce Plaintiff's request for $1,696.50 for a collective 3.9 hours researching, drafting, editing, and filing the motions.  *See P5 Sols.*, 2020 WL 3259793, at *3 (finding that a charge of $2,485 spent preparing one motion *in limine* was reasonable).

### iv.    Time Logged in Vague Entries

Next, Defendants highlight multiple time entries which they argue are too vague to justify the awarding of attorney's fees.  ECF No. 70, at 4.  The entries with which Defendants take issue are those labeled "T/C w/ client" with no further explanation, *id.*, which collectively account for

.4 hours of Plaintiff's counsel's work.  ECF No. 68, at 1.  While these entries clearly refer to counsel's communication with Ms. Velasquez Flores, the fee petition does not include additional detail about the subject of these conversations.  Vague task descriptions impede courts from assessing the reasonableness of the time spent on a task.  *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 152 F. Supp. 3d 503, 517 (E.D. Va. 2015).  While counsel need not "record in great detail how each minute of [their] time was expended[,]" they should "at least . . . identify the general subject matter of [the] time expenditures."  *Butler v. Directsat USA, LLC*, DKC-10-2747, 2016 WL 1077158, at *4 (D. Md. Mar. 18, 2016) (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 789 (D. Md. 2000)).  Because courts may decline to award fees for time logged as communication where the time entry is silent as to the subject matter of the communication, *see, e.g.*, *In re Smith*, 624 B.R. 781, 789, 799 (Bankr. D. S.C. 2021) (rejecting a fee petition with vague time entries such as "email client"), and Plaintiff's Reply does not address Defendants' objection to these entries, the Court will reduce Plaintiff's fee petition by .4 hours.

### v.    Time Logged During Trial Delay

Defendants also argue that the Court should exclude 2.5 hours Plaintiff's counsel and paralegal logged on the first day of trial due to a security issue at the Court.  ECF No. 70, at 5.  Plaintiff's Reply does not address this argument; thus, it is not clear whether Plaintiff's counsel and paralegal had arrived at the Court and what they were working on during this time.  On other dates that the case was in trial, Plaintiff's fee petition includes separate entries for time spent in "trial preparation" and time spent in trial.  *See* ECF No. 67-2, at 5.  On November 1, the date the Court delayed the trial, Plaintiff's counsel's records report, including travel, a full 8 hours in trial for himself and 7.5 hours in trial for the paralegal.  *Id.* at 5–6.  It is not clear whether Plaintiff's counsel was working on this case during the delay or if counsel simply neglected to reflect the trial

delay in the time log.  Given the ambiguity, the Court will exclude from the recoverable time 2.5 hours at Mr. Kurzyna's billing rate and 2.5 hours at the paralegal's billing rate.

## 2.  Novelty and Difficulty of the Questions Raised

Applying the second *Johnson* factor, Defendants argue that the issues involved in this case were not novel or complex given Plaintiff's counsel's expertise in the area.  ECF No. 70, at 5. Accordingly, Defendants argue, the Court should adjust the lodestar value downward.  *Id.*

The novelty and difficulty of the questions raised is not a factor that warrants reduction of the fee award in this case.  First, the Court is not convinced that there was nothing novel or complex about this case.  This Court has acknowledged that the question of "an employee's status as an independent contractor," which was an issue in this case, "requires a rather fact-specific analysis." *Smith v. Touching Angels Healthcare, Inc.*, No. RDB-17-0673, 2018 WL 1035769, at *3 (D. Md. Feb. 23, 2018) (declining to reduce the fee award based on the novelty and difficulty of the questions involved in an FLSA case).  *See also Matias Guerra v. Teixeira*, No. TDC-16-0618, 2019 WL 3927323, at *7 (D. Md. Aug. 20, 2019) (noting that the "inquiry into whether Plaintiff was an independent contractor or an employee . . . add[ed] an element of complexity to the litigation").  Additionally, Plaintiff used a novel method of showing the hours she worked to prove her damages.  These considerations balance out the well-established nature of the legal issues in wage cases.  Furthermore, the relatively low number of hours Plaintiff's counsel dedicated to deposing Defendants casts light upon the fact that Plaintiff's counsel's experience in the employment law field kept the time he spent on this case to a minimum.  ECF No. 67-2, at 4 (Plaintiff's counsel spent only 2.4 hours preparing for and 4.3 hours deposing Defendants).  Aside from the time Plaintiff's counsel spent responding to interrogatories, which the Court has already addressed, Defendants do not point to any specific time entries that are unreasonable in light of

the relative straightforwardness of this case.  Accordingly, the Court will not further reduce the fee petition award based on this factor.

### 3.   The Amount Involved and the Results Obtained

Next, Defendants assert that the Court should reduce Plaintiff's fee award given the amount of damages involved and the results obtained in the case.  ECF No. 70, at 6.  The "extent of relief obtained by [a] plaintiff" is "particularly important when calculating reasonable fees . . . ."  *Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007).  While the Supreme Court has "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil plaintiff actually recovers[,]" *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986), courts assess the "results obtained" by comparing the amount of damages a plaintiff initially sought with what they ultimately recovered.  *See, e.g.*, *Sakala*, 2018 WL 5724010, at *11–12 (recommending attorneys' fees be reduced by 20% in FLSA case where the plaintiffs ultimately recovered less than half of the damages they initially sought and less than a fifth of the maximum damages recoverable under the statute).  While "disproportionality between a fee award and a verdict" will not justify a reduction of attorneys' fees, "a lack of litigation success will."  *McAfee*, 738 F.3d at 94–95.  Courts "must compare the amount of damages sought to the amount awarded," *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005), but should not "reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations," *Nigh*, 478 F.3d at 190.  Litigation "success is not binary – a party is not simply successful or unsuccessful but may achieve 'partial or limited success.'  In such a situation, the party may be entitled to an award of some, but not all, of the attorney's fees requested."  *Randolph*, 780 Fed. App'x at 22–23 (quoting *Hensley*, 461 U.S. at 436 (internal citation omitted)).

13

In this action, Plaintiff sought to recover $3,278.52 in unpaid wages and asked the jury to award up to an additional $6,557.04 in treble damages if the jury found that Defendants lacked good faith in failing to pay Plaintiff minimum and overtime wages. *See* ECF No. 63. Plaintiff was partially successful; she prevailed on her claim that Defendants underpaid her under state and federal minimum wage and overtime laws, but did not establish that Defendants lacked a good faith basis and, accordingly, the jury awarded Plaintiff only $3,278.52 in damages. *Id.* Nonetheless, as Plaintiff indicates, her lack of success on the treble damages claim is partially neutralized because this Court has found that Plaintiff is entitled to liquidated damages, albeit in a lesser amount than she may have recovered had her treble damages request to the jury been successful. *See* ECF No. 72 (awarding Plaintiff liquidated damages in the amount of $3,278.52). All in all, Plaintiff recovered two thirds of the maximum recovery she sought. *See Quiroz v. Wilhelm Com. Builders, Inc.*, No. WGC-10-2016, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011) ("Plaintiffs are entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both"). Plaintiff's counsel did not make any reduction to their fee request in light of the partially favorable results obtained in this case. The Court finds that a reduction to the lodestar value of 5% is appropriate given the results that Plaintiff achieved in this case. *See Matias Guerra*, 2019 WL 3927323, at *10 (reducing fee award in FLSA case by 5% where "[t]he only loss Plaintiff had was the Court not awarding him treble damages"); *Ramirez v. 316 Charles, LLC*, No. SAG-19-3252, 2021 WL 662185, at *7 (D. Md. Feb. 19, 2021) (reducing the fee award by 5% in FLSA case where the plaintiff was awarded 80% of the unpaid wages originally sought but was not successful in seeking an award of treble damages).

Defendants also argue that the Court should reduce the lodestar value pursuant to this *Johnson* factor because "the jury's decision in this case cannot be said to have wide-reaching

consequences . . . [and] can hardly be described as monumental." ECF No. 70, at 6. In support of this argument, Defendants cite a passage from the court's decision in *Johnson* explaining that, with respect to the amount involved and results obtained in a case, where a "decision corrects . . . discrimination affecting a large class of . . . employees, the attorney's fee award should reflect the relief granted." 488 F.2d at 718. Defendants argue that Plaintiff's recovery in this case "pales in comparison" to the "large class of employees" in *Johnson* whose rights were vindicated. ECF No. 70, at 6 (quoting *id.*). However, this Court has awarded attorneys' fees in several wage cases that involved a single plaintiff without reducing fees for this reason. *See, e.g.*, *Jackson v. Reliasource, Inc.*, No. WMN-16-358, 2017 WL 3216822, at *1–2, 4 (awarding $163,392 in attorneys' fees where a single plaintiff recovered $24,253.74 in an FLSA and MWPCL action) (D. Md. Jul. 28, 2017); *Ramirez*, 2021 WL 662185, at *5, 7 (awarding $55,530.35 in attorneys' fees where a single plaintiff recovered $18,806.44 in an FLSA, MWHL, and MWPCL action). Moreover, "the case served important interests of the FLSA" because Plaintiff used a unique method to prove the hours that she worked in the absence of formal time records. *Almendarez v. J.T.T. Enters. Corp.*, No. JKS-06-68, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010) (finding that the "results obtained" factor supported the lodestar figure despite the plaintiffs' minimal success because "the case served important interests of the FLSA"). Accordingly, the Court declines to apply any additional reductions to the fees award.

### 4. Awards in Similar Cases

The final *Johnson* factor instructs courts to consider whether the requested fee is reasonable in light of fee awards in similar cases. *McAfee*, 738 F.3d at 88 n.5. Defendants note, in passing, that "significantly lower awards in similar cases" warrant a downward reduction of 70% but provide no further argument on the matter. ECF No. 70, at 8. Plaintiff's Memorandum in support

of her Motion for Attorney Fees cites to several similar cases where comparable attorneys' fees were awarded.  *See* ECF No. 67, at 11–12.  For example, in *Almendarez*, this Court awarded $84,058 in attorneys' fees where the jury verdict totaled $6,600 in favor of three plaintiffs who made claims under the FLSA.  2010 WL 3385362, at *1.  In *Butler*, this Court awarded $258,390.67 in attorneys' fees for a class action FLSA suit in which the plaintiffs each received between $54.36 and $4,197.78 with a total of approximately $36,000 recovered.  2016 WL 1077158, at *1, *7.  Given that Defendants failed to identify any similar cases with significantly lower awards, the Court will decline to adjust Plaintiff's fee petition based on this factor.

### 5.  Billing Judgment

Defendants also argue that the Court "must adjust the number of hours to delete duplicative or unrelated hours, and the number of hours must be reasonable and represent the product of 'billing judgment.'"  ECF No. 70, at 7 (quoting *Nelson*, 2013 WL 388991, at *1).  While Defendants frame this adjustment as its own step to further reduce the lodestar value, it is more accurately a consideration at "step 1" when calculating an attorneys' fees award, during which courts use the *Johnson* factors to ensure the lodestar value is reasonable.  *See Nelson*, 2013 WL 388991, at *1 ("The court must adjust the number of hours to delete duplicative or unrelated hours . . . [which] must be reasonable and represent the product of 'billing judgment.'  To determine the reasonableness of the number of hours and the hourly rate, the court considers [the] twelve [*Johnson*] factors" (internal citations omitted)).  As part of their argument, Defendants do not identify any hours they believe to be duplicative or unrelated, but rather restate the arguments they made with respect to the *Johnson* factors.  ECF No. 70, at 7.  Because the Court has considered duplicative hours while reducing the fee award as appropriate under the *Johnson* factors, it will not apply any further reduction at this stage.

**B.      Degree of Plaintiff's Success**

At step three of calculating an attorneys' fees award, courts finally "award some percentage of the remaining amount [requested], depending on the degree of success enjoyed by the plaintiff." *Randolph*, 715 F. App'x at 22 (quoting *McAfee*, 738 F.3d at 88).  This Court has recognized the potential overlap between this step and the eighth *Johnson* factor – the amount in controversy and the results obtained – and has cautioned that the overlap raises concern "that an award could be reduced twice for the same deficiency."  *Matias Guerra*, 2019 WL 3927323, at *7; *Sakala*, 2018 WL 5724010, at *8.  At step three, while "it can be challenging to put a number on success," *Randolph*, 780 Fed. App'x at *23 (quoting *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015)), courts again "compare the amount of damages sought to the amount awarded."  *Id.* (quoting *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005)).

The Court has made this comparison in its analysis of the eighth *Johnson* factor and will avoid reducing the award twice for the same reason.  As noted, there is no requirement of proportionality between attorneys' fees and the verdict reached in wage cases.  *Rivera*, 477 U.S. at 578.  As the Supreme Court explained, "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious . . . claims but relatively small potential damages to obtain redress from the courts."  *Id.*  Maryland courts, too, reject methods of calculating attorneys' fees that seek to "make[] the fee award proportional to the monetary judgment awarded."  *Flaa v. Manor Country Club*, 857 A.2d 604, 615 (Md. App. 2004), *rev'd on other grounds*, 874 A.2d 1020 (Md. 2005).  As here, "[a]ttorneys' fees awards may 'substantially exceed . . . damages' in FLSA cases."  *Atkins v. Sunbelt Rentals, Inc.*, No. PWG-14-1717, 2016 WL 3647610, at *4 (D. Md. June 30, 2016) (quoting *Almendarez*, 2010 WL 3385362, at *3).  While Defendants offer an out of Circuit example of a court seemingly applying a rule of proportionality

in reducing attorneys' fees, *see* ECF No. 70, at 8 (citing *Harris v. Chipotle Mexican Grill, Inc.*, No. 13-cv-1719, 2018 WL 617972 (D. Minn. Jan. 29, 2018)), this Court declines to adopt this approach.  First, even after the significant reduction the Court applied in *Harris*, the fees still dwarfed the damages the plaintiffs won by nearly a factor of ten.  *See* 2018 WL 617972, at *14 (awarding $600,193.55 in fees where the plaintiffs recovered $62,000 in damages).  Second, this Court routinely awards fees that dwarf the damages the plaintiffs recover in wage cases.  *See*, *e.g.*, *Almendarez*, 2010 WL 3385362, at *1 (awarding $84,058 in fees for a recovery of $6,600 in FLSA case); *Chapman v. Ourisman Chevrolet Co., Inc.*, No. AW-08-2545, 2011 WL 2651867, at *13, 18 (D. Md. July 1, 2011) (awarding $37,292.52 in fees for a recovery of $3,100 in FLSA case); *Ramnarine v. Rainbow Child Dev. Ctr.*, PWG-17-cv-2261, 2022 WL 16709764, at *3, 17 (D. Md. Nov. 4, 2022) (awarding $127,573.63 in fees for a recovery of $2,389.50 in wage case). Accordingly, the Court will not apply any further reductions to the fee award.

## C.    Policy Considerations

Finally, Defendants ask this Court to consider the consequences that the requested attorneys' fees award will have on Defendants – a small business and its owner.  ECF No. 70, at 9.  The Court is mindful of the ramifications the substantial award may have on Defendants; however, it is bound to award attorneys' fees pursuant to the fee-shifting provisions of the statutes under which Plaintiff prevailed, and it must do so in accordance with the process that the Fourth Circuit requires.  Further, while Defendants warn that awarding significant attorneys' fees to plaintiffs can have a chilling effect on defense and encourage settlement of allegedly frivolous claims, the reverse comes with its own challenges: if plaintiffs' attorneys are unable to recover what they would otherwise charge in the private market, then plaintiffs with meritorious, but relatively modest claims would be unable to secure counsel to vindicate their rights.  Defendants'

argument that "to award attorney's fees that amount to more than 20 [times] the damages suffered by the Plaintiff would be patently unreasonable" is another proportionality argument. ECF No. 70, at 9–10. Once again, "a rule requiring proportionality would 'seriously undermine Congress'[s] purpose' and prevent[] victims who frequently cannot pay counsel at market rates from effective access to the justice system." *Salinas v. Com. Interiors*, No. 8:12-cv-1973-PWG, 2018 WL 2752553, at *3 (quoting *Rivera*, 477 U.S. at 576) (D. Md. Jun. 8, 2018). Further, given the Court's subsequent award of liquidated damages and its present reduction in fees, the disproportionality between the Plaintiff's award and the fees award has been significantly reduced. Accordingly, the Court will not apply any further reductions to Plaintiff's fee request for these reasons.

## II.  Bill of Costs

In addition to attorneys' fees, Plaintiff also seeks reimbursement of costs for the following amounts: 1) $165.00 for the complaint filing fee; 2) $115.00 for service on Defendants; 3) $816.16 for the cost of deposing Defendants; 4) $7,046 for trial interpreters' fees; and 5) $86.46 for travel costs before and during trial. ECF No. 67-3.

Rule 54(d)(1) provides that costs "should be allowed to the prevailing party" after trial "unless . . . a court order provides otherwise." Fed. R. Civ. P. 54(d)(1). In this District, the Clerk of Court is entrusted with the taxation of certain costs in the first instance. *See* U.S. District of Maryland Guidelines for Bills of Costs § I.A. *See also id.* (providing that the "clerk may tax costs on 14 days' notice"). Although "the rule creates the presumption that costs are to be awarded to the prevailing party," *Cherry v. Champion Intern. Corp.*, 186 F.3d 442, 446 (4th Cir. 1999), district courts have the discretion to determine which costs to award. *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 549 (4th Cir. 1998). Courts may deny costs if supported by "good reason." *Ellis v.*

*Grant Thorton LLP*, 434 Fed. App'x 232, 235 (4th Cir. 2011).  "Good reason" includes "(1) misconduct by the prevailing party; (2) the unsuccessful party's inability to pay the costs; (3) the excessiveness of the costs in a particular case; (4) the limited value of the prevailing party's victory; or (5) the closeness and difficulty of the issues decided." *Id.* (citing *Cherry*, 186 F.3d at 446).

Defendants challenge Plaintiff's request for the fees incurred for two Spanish-language interpreters that Plaintiff contracted with during trial.[1]  ECF No. 70, at 5.  The interpreters each charged a rate of approximately $115 per hour.  *Id.*  Defendants argue that (1) Plaintiff has not established that Defendants should be responsible for interpreter fees; and (2) that the fee the interpreters charged was unreasonable because it exceeds the rate prescribed for federally certified interpreters.  ECF No. 70, at 5.

The fees of trial interpreters are recoverable legal costs under the FLSA, MWHL, and MWPCL.  *See Gonzalez v. N.Y. Mart MD, Inc.*, No. TDC-20-0020, 2022 WL 3577394, at *4 (D. Md. Aug. 19, 2022) (finding that the cost of trial interpreters was a reasonable litigation expense and recoverable under the FLSA, MWHL, and MWPCL); 28 U.S.C. § 1920(6) (providing for compensation of interpreters).  The federal interpreter rates that Defendants refer to are prescribed by the schedule of fees under the Court Interpreters Act, 28 U.S.C. § 1827.  The plain language of the Act states that the statute applies to "judicial proceedings instituted by the United States."  28 U.S.C. § 1827(a).  "Most courts have adopted the view that the Act does not apply to civil cases between private" litigants.  *Act II Jewelry, LLC v. Zhu*, No. 2:09-cv-407, 2010 WL 11450509, at

---

[1] Defendants contest the interpreters' fee as part of their lodestar analysis.  ECF No. 70, at 5. Interpreters' fees, however, are costs and are properly challenged under this framework.  *See* 28 U.S.C. § 1920(6) ("a judge or clerk . . . may tax as costs . . . compensation of interpreters"). *See also* ECF No. 67-3 (Plaintiff's Exhibit 3, charging the interpreters' fees as costs).

*2–3 (E.D. Va. Feb. 19, 2010) (collecting cases and holding that the Act was inapplicable in a civil case brought by a private party). *See also Mendez v. Integrated Tech Grp., LLC*, No. 18-22059, 2020 WL 6826355, at *5 (S.D. Fla. Nov. 20, 2020) (holding the § 1827 interpreter rate schedule was inapplicable in a civil case between private parties); *Ramirez v. Rosalia's Inc.*, No. 20-cv-23270, 2023 WL 3619292, at *9 (S.D. Fla. May 23, 2023) (same); *Anderson v. State Bar of Ca.*, No. 89-15756, 1990 WL 102772, at *3 (9th Cir. July 23, 1990) (holding that § 1827 was not applicable to a civil suit brought by a private litigant); *Lynch v. Ducasse*, No. 3:18-cv-2044, 2023 WL 4143295, at *1 (M.D. Pa. June 22, 2023) (same). *But see Osorio v. Dole Food Co.*, No. 7-22693-civ, 2010 WL 3212065, at *9 (S.D. Fla. July 7, 2010) (reducing the interpreter fee to the Court Interpreters Act schedule in a civil case between private parties without a discussion of § 1827's applicability). This Court has awarded interpreter fees at hourly rates close to the rate Plaintiff requests, *De Paredes*, 2023 WL 8235753, at *4 (reimbursing translation services at a rate of $100 per hour); *Molina v. KP Stoneymill, Inc.*, No. GLS-19-3123, 2021 WL 2805838, at *7 (D. Md. July 6, 2021) (awarding fees at $95 per hour for a paralegal who "performed strictly Spanish interpreter services"), and Defendants do not assert that the interpreters' hourly rates are unreasonable on the private market. Accordingly, the Court will award the interpreters' fees at the rate Plaintiff requests.

## CONCLUSION

For the aforementioned reasons, Plaintiff's counsel will be awarded $67,920.72, which reflects an exclusion of particular time entries, as well as an overall reduction of 5% as discussed above. Additionally, Plaintiff's counsel will be awarded $8,228.62, reflecting an award of all of Plaintiff's requested costs.

So ordered.

Date: March 1, 2024

_____/s/_____

Ajmel A. Quereshi
U.S. Magistrate Judge